EIKREM v. NEW ENGLAND BRIQUETTE COAL CO.

(District Court, D. Rhode Island. November 17, 1903.)

No. 1,103.

1. SHIPPING—CHARTER PARTY—LIABILITY FOR FREIGHT.
Under a charter party providing that the charterer shall provide a full and complete cargo of sludge, he to pay $1.75 per ton for freight, there can be recovery only for the amount shipped; there being no evidence that the vessel could have prudently taken more of such a cargo, or that the master erred in his judgment that that was all she could prudently carry.

2. SAME—DEMURRAGE.
Complainant, on a libel for demurrage, is not precluded from proving the exact loading and discharging times by having previously presented a bill for a smaller amount.

In Admiralty.

Matteson & Healy, for libelants.
Livingston Ham, for claimant.

BROWN, District Judge. This libel is for freight and demurrage. The schooner James Duffield, described in the charter party as "of the burthen of 178 tons, or thereabouts, registered measurement,"

¶ 2. Demurrage, see notes to Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.

was chartered for a voyage from Mantua Creek, N. J., to Providence, R. I. The charterer was to provide "a full and complete cargo under deck of sludge in bulk," and to pay therefor at the rate of $1.75 per ton of 2,240 pounds; the charterers to load, trim, and discharge the cargo. The vessel carried 167 tons 1,690 pounds of sludge. The claimant contends that this was not a full and complete cargo, and not a substantial performance of the agreement. The respondent's argument is that, as the vessel could carry 250 or 260 tons of soft coal, and as a cubic foot of soft coal weighs 51⅜ pounds, while a like quantity of sludge weighs 62½ pounds, 304 tons of sludge could be put into the same space as 250 tons of soft coal. By similar computations based on other evidence, he reasons that 322½ tons was the probable sludge-carrying capacity of the vessel. But this argument is obviously unsound, since it considers only the amount of space in the hold of the vessel, and disregards the facts that the sludge was of greater weight per cubic foot than soft coal, and was not a solid substance, but a substance described by the master of the vessel as "similar to thick pitch, and very easy to run from place to place. It would keep soft. It would not harden very solid in cold weather. I don't know what to call it—whether liquid or solid. It would run." It was a shifting cargo, and in fact did shift so that at one time on the voyage the vessel had a list of some 12 inches. As the vessel was to receive payment at the rate of $1.75 per ton for the amount carried, it was to her advantage to take as large a cargo as possible. There is no evidence to show that the Duffield could have taken prudently a larger cargo of this peculiar substance in bulk, or that the master erred in his judgment that between 167 and 168 tons was all that the vessel could carry safely.

According to the uncontradicted proofs, there was a delay of 4 days and 19 hours in loading, and a delay of 17 days in discharging. For each day's detention the vessel was entitled to $16. While the bill presented to the respondent, the New England Briquette Coal Company, was somewhat smaller, this does not preclude the libelant from proving the exact loading and discharging times; and no evidence has been offered to show any inaccuracy in the detailed statement annexed to libelant's brief, nor is the accuracy of the figures questioned upon the respondent's brief.

I find that the complainant is entitled to $348.66 for demurrage, with interest from the date of filing the libel, and to $1.27 unpaid balance of freight.